RICHARD A. LAPOINTE *v.* COMMISSIONER OF
CORRECTION
(AC 21249)

Lavery, C. J., and Mihalakos and O'Connell, Js.

---

■■■■■■

■■■■■■■■■■

Argued October 31, 2001—officially released January 22, 2002

■■■■

■■■■■■■■■■■

■■■

*Paul Casteleiro*, pro hac vice, with whom, on the brief, was *W. James Cousins*, for the appellant (petitioner).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Jo Anne Sulik*, assistant state's attorney, for the appellee (respondent).

*Opinion*

O'CONNELL, J. The petitioner, Richard A. Lapointe, appeals from the dismissal of his petition for a writ of habeas corpus. He claims that the habeas court improperly (1) denied his multiple motions to open the evidentiary portion of the habeas hearing, (2) failed to grant him a new trial because of ineffective assistance of habeas counsel and (3) failed to rule on his posttrial motion for disclosure. We affirm the judgment of the habeas court.

Following a jury trial, the petitioner was found guilty of capital felony, arson murder, felony murder, murder, arson in the first degree, assault in the first degree, sexual assault in the first degree, sexual assault in the third degree and kidnapping in the first degree. After hearing evidence in the penalty phase of the proceedings on the capital felony conviction, the jury determined that the state had proved an aggravating factor

beyond a reasonable doubt and that the petitioner had proved a mitigating factor by a preponderance of the evidence. On September 8, 1992, the petitioner was sentenced to life in the custody of the commissioner of correction without possibility of release. On July 16, 1996, our Supreme Court affirmed the judgment of conviction in *State* v. *Lapointe*, 237 Conn. 694, 678 A.2d 942 (en banc), cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996). The habeas corpus proceeding that is the subject of this appeal followed. The facts of the underlying crimes and trial court proceedings are detailed in the petitioner's direct appeal. Id., 696–702. It is sufficient for purposes of this appeal to state that the defendant was convicted by a jury of sexually assaulting and murdering his wife's eighty-eight year old grandmother, and thereafter setting her apartment on fire to cover the crimes.

Following the defendant's direct appeal, a group known as "Friends of Richard Lapointe" (Friends) raised funds to retain an attorney to attack collaterally what the Friends perceived was a wrongful conviction. The group retained Henry Theodore Vogt, a member of the Connecticut bar, for this purpose. Vogt filed a petition for a writ of habeas corpus, which, after a series of amendments, came to trial on February 23, 2000, and continued on various dates until its conclusion on April 6, 2000.

As the habeas hearing progressed, the Friends became dissatisfied with the manner in which Vogt was handling the trial and attempted to terminate his representation of the petitioner. In the middle of the ongoing habeas trial, a New Jersey attorney, Paul Casteleiro,[1] entered the courtroom and, without filing an appearance and without association with Vogt, seated himself

---

[1] Attorney Casteleiro represented the petitioner on appeal before this court in pro hac vice status.

at the counsel table. Casteleiro also delivered an affidavit to the court clerk that was critical of Vogt's handling of the case. Vogt objected to Casteleiro's presence, prompting a rebuke of Casteleiro by the court and an order for him to go back and sit in the spectator section of the courtroom. Undeterred, Casteleiro persisted in his efforts to interfere in the proceedings, causing the court to warn him that "[i]f you open your mouth once more, I am going to have the sheriff place you under arrest."

The remainder of the habeas hearing proceeded without incident and concluded on April 6, 2000. On or about April 20, 2000, W. James Cousins, a Connecticut attorney, attempted to file an appearance on behalf of the petitioner. Vogt objected to Cousins' appearance pursuant to Practice Book § 3-8.[2] While Vogt's appearance was still active in the case, Cousins filed a series of motions. These included a motion to open the trial, a motion to admit the New Jersey counsel, Casteleiro, as counsel pro hac vice and a motion to strike Vogt's posttrial brief together with a memorandum of law in support of the request to open the evidence. The habeas court advised Cousins that he "had no right to file anything" until the question of whether he was to be counsel in the case was resolved by the court. Ultimately, the habeas court ruled that Vogt would remain in the case to file a reply to the respondent's posttrial brief,

---

[2] Practice Book § 3-8 provides in relevant part: "Whenever an attorney files an appearance for a party . . . and there is already an appearance of an attorney . . . on file . . . the attorney . . . filing the new appearance shall state thereon whether such appearance is in place of or in addition to the appearance or appearances already on file. If the new appearance is stated to be in place of any appearance or appearances on file, the party or attorney filing that new appearance shall serve, in accordance with Sections 10-12 through 10-17, a copy of that new appearance on any attorney or party whose appearance is to be replaced by the new appearance. Unless a written objection is filed within ten days after the filing of an in-lieu-of appearance, the appearance or appearances to be replaced by the new appearance shall be deemed to have been withdrawn . . . ."

if he chose to do so, and upon so filing, his services in the case would be concluded. The court allowed the pleadings filed by Cousins to stand, granted the motion to admit Casteleiro pro hac vice and made it clear that the court was not "going to start this case all over again, we are not going to reopen the evidentiary portion of this case. It's far too late for that." The court further indicated that it would decide the case on the evidence that was presented and would ignore those aspects of new counsel's material that it considered beyond the scope of the hearing or harmful to the petitioner. In a comprehensive memorandum of decision, the habeas court dismissed the habeas petition.

The petitioner does not contend that the habeas court improperly dismissed the habeas petition on the basis of the evidence before the court. Rather, he contends that (1) habeas counsel should have presented additional evidence that would have warranted a favorable habeas ruling and (2) the habeas court should have allowed the petitioner the opportunity to offer such additional evidence after the close of the hearing.

I

The petitioner, through his new counsel, first argues that the court improperly refused his multiple motions to open the evidentiary portion of the trial. He sought to present evidence of actual innocence, prosecutorial misconduct and ineffective assistance of criminal trial counsel. A case may be opened to fill an evidentiary gap resulting from inadvertence, mistake or some compelling circumstance. *Bortner* v. *Woodbridge*, 250 Conn. 241, 265–67, 736 A.2d 104 (1999). Examination of the petitioner's motions, the accompanying memorandum of law and his appellate brief make it clear that in this case, he was not seeking to merely fill in an inadvertent evidentiary omission, but rather to retry most of the case and to initiate entirely new theories of defense.

It is elementary that a habeas corpus petitioner may rely only upon that which he has pleaded and that his right to recover is limited to the allegations of his petition. *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 181, 774 A.2d 148 (2001). Whether a court will open a case after the close of testimony is within the court's discretion. *State* v. *Carter*, 228 Conn. 412, 420, 636 A.2d 821 (1994). This discretion must be carefully exercised. "If requests to reopen were casually granted and became routine, the orderly trial process, fundamental to our jurisprudence, would soon erode away." (Internal quotation marks omitted.) *State* v. *McKnight*, 191 Conn. 564, 578, 469 A.2d 397 (1983). Every reasonable presumption is given in favor of the correctness of the habeas court's ruling. See *State* v. *Holmquist*, 173 Conn. 140, 152, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977).

We conclude that the habeas court did not abuse its discretion in declining to open the evidentiary portion of the trial.

## II

The petitioner next claims that he is entitled to a new trial because of the ineffective assistance of his habeas counsel. The law presumes that counsel is competent until evidence has been introduced to the contrary. *Strickland* v. *Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). It is elementary jurisprudence that the determination of whether counsel's conduct was ineffective is a peculiarly fact bound inquiry. *Phillips* v. *Warden*, 220 Conn. 112, 134, 595 A.2d 1356 (1991). No citation is needed for the fundamental principle that as an appellate tribunal, this court cannot find facts. Only a trial court could find that Vogt's performance was constitutionally defective, and it could do so only after a claim of ineffective assistance of counsel

was properly filed, pleaded and litigated. "Our Supreme Court has consistently concluded that the preferred vehicle for an ineffective assistance of counsel claim is either a petition for a writ of habeas corpus or a petition for a new trial, not a direct appeal. . . . Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible. The evidentiary hearing provides the trial court with the evidence that is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency." (Citations omitted; internal quotation marks omitted.) *State* v. *Owens*, 63 Conn. App. 245, 262, 775 A.2d 325, cert. denied, 256 Conn. 933, 776 A.2d 1151 (2001).

The petitioner is not without remedy. There is no bar to his filing a petition for a second writ of habeas corpus challenging the effectiveness of his first habeas counsel. *Lozada* v. *Warden*, 223 Conn. 834, 845, 613 A.2d 818 (1992). We conclude, therefore, that the petitioner improperly raised this claim on direct appeal from the dismissal of his habeas petition.

### III

The petitioner's final claim is that the habeas court improperly failed to rule on his posttrial motion for disclosure of certain allegedly exculpatory material. Following the close of the habeas trial, the petitioner filed a motion for disclosure of exculpatory evidence seeking to obtain reports and opinions concerning the burn time of the fire in the victim's home. The habeas court never ruled on this motion.

" 'It is elementary that to appeal from the ruling of a trial court there must first be a ruling.' *State* v. *Kim*, 17 Conn. App. 156, 157, 550 A.2d 896 (1988). Without . . . a hearing on [a] motion and ultimate findings or rulings of the trial court, there is no record for us to

review. '[T]his court cannot review a nonexistent ruling.' *Augeri* v. *Planning & Zoning Commission*, 24 Conn. App. 172, 179, 586 A.2d 635, cert. denied, 218 Conn. 904, 588 A.2d 1381 (1991). It is the duty of the appellant to furnish this court with a proper appellate record." *State* v. *Kindrick*, 30 Conn. App. 56, 60, 619 A.2d 1 (1993). Accordingly, we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.